# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 97 C 514 | **DATE** | 10/1/2003 |
| **CASE TITLE** | Janet Chandler, Ph.D. vs. The Hektoen Institute for Medical Research, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion for protective order is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices: 7 | Document Number |
|---|---|---|---|---|
| | No notices required. | | OCT 02 2003 date docketed | 245 |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | docketing deputy initials | |
| | Docketing to mail notices. | | 10/1/2003 | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| ✓ | Copy to judge/magistrate judge. | 03 OCT -1 PM 4:59 | | |
| | courtroom deputy's initials: IS | Date/time received in central Clerk's Office | mailing deputy initials: IS | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JANET CHANDLER, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> THE HEKTOEN INSTITUTE FOR MEDICAL RESEARCH; COOK COUNTY HOSPITAL; and COOK COUNTY, ILLINOIS, <br><br> Defendants. | Case No. 97 C 514 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge <br> Martin C. Ashman |

**DOCKETED**
OCT 0 2 2003

## MEMORANDUM OPINION AND ORDER

The Relator, Janet Chandler, Ph.D., brought this *qui tam* action on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, to recover funds allegedly fraudulently obtained by Defendants, Hektoen Institute for Medical Research and Cook County,[1] in their administration of a federally funded drug treatment program. On December 5, 2002, Judge Gettleman entered a Protective Order under which discovery would proceed. Presently before this Court is Plaintiff's Motion for Protective Order to apply to the County the restrictions of the protective order entered on December 5, 2002, and to require the County to divulge to Relator any documents that it reviews to prepare its defense.[2]

---

[1] The district court judge dismissed Cook County Hospital from the case on February 9, 1999, because the Hospital has no identity independent of the County. *See United States ex rel. Chandler v. Hektoen Inst.*, 35 F. Supp. 2d 1078, 1086 (N.D. Ill. 1999).

[2] Judge Gettleman referred the instant motion to Court. See 28 U.S.C. § 636(b)(1)(A));
(continued...)

245

## I. Background

In 1989, John H. Stroger, Jr. Hospital of Cook County, f/k/a Cook County Hospital (the "Hospital"), received a five million dollar grant from the United States Department of Health and Human Services and the National Institute of Drug Abuse to fund a substance abuse research and treatment program for pregnant women in Cook County. Receipt of the grant depended on the Hospital's compliance with federal human subject research regulations. The program, known as "New Start," was designed to provide extensive treatment and services to its patients, including prenatal and post-natal care as well as social and educational support services. Further, the research program compared these patients' results against the results of patients referred to other community-based substance abuse programs.

On September 3, 1993, New Start hired the Relator, Dr. Chandler, first as its project director and later as New Start's co-principle investigator. Dr. Chandler was discharged in 1995, after voicing concerns about the Hospital's administration of New Start. Thereafter, Dr. Chandler filed this False Claims Act claim, alleging that the Hospital misrepresented New Start's success; submitted false progress reports based on non-existent program participants; failed to comply with research regulations; improperly dispensed methadone to pregnant women; failed to obtain informed consent from New Start participants; failed to obtain thorough medical or drug histories; provided substandard care (e.g. by failing to perform physicals when required); failed to keep accurate medical records; and failed to randomize participants.

---

(...continued)
Local R. 73.1(b).

The protective order governing discovery in this case is the result of a protracted battle between Dr. Chandler and the County. A brief summary of the discovery process is necessary to properly frame the issue presently before this Court. First, the records in question consist of research records and treatment records. New Start maintained research records on women assigned to the New Start Clinic and on those women assigned to the control group. Additionally, New Start maintained treatment records for those women assigned to the clinic. Finally, New Start maintained obstetric and pediatric records for all participants.

On January 7, 1999, in response to Dr. Chandler's request for discovery of New Start treatment and research records, the court ordered the County to produce the records with all patient-identifying information redacted. The order also required that notice be sent to New Start participants, advising them that Dr. Chandler would review patients' records with identifying information redacted, and allowed patients an opportunity to object to disclosure of their records or to consent to disclosure of identifying information. In the following months, discovery resulted in confusion and contention about the redacted records, and Judge Gettleman eventually ordered the County to produce a key to the control numbers to allow Dr. Chandler to link the files with study data.

On March 5, 2001, after Dr. Chandler sought discovery of unredacted patient records, the court ordered the County to produce those records to Dr. Chandler's representatives. On March 14, 2001, the court entered a protective order limiting disclosure to three of Dr. Chandler's attorneys and one paralegal for ten days, and prohibiting those individuals from disclosing the information contained in the records to anyone, including Dr. Chandler. The County appealed, arguing that (1) the court's order violated 42 U.S.C. § 290dd-2 because it did not require renewed

notice to New Start participants and (2) the order violated 42 C.F.R. § 2.63(a) because it allowed Dr. Chandler's representatives to view confidential communications contained in the records. *United States ex rel. Chandler v. Cook County, Illinois*, 277 F.3d 969, 981-83 (7th Cir. 2002), *aff'd in part*, 123 U.S. 1239 (2003). The Seventh Circuit agreed and issued mandamus, ordering the district court judge to enter a new protective order excluding confidential communications from discovery and to send clear notice to New Start participants. *Id.*

On December 5, 2002, the court issued a new protective order, which is the subject of the Relator's motion. The parties agreed that twelve items in the New Start records might contain confidential communications, which the court ordered must either be removed or masked. Regarding treatment files of those patients assigned to the New Start Clinic, Judge Gettleman ordered that those files containing confidential communications be removed. (Dec. 5, 2002 Protective Order at 3.) However, if the file's cover page or summary document contained no confidential communications, the court ordered that the page not be removed. (Id.) With respect to the remaining items, the Relator required access to only the first or the first and last pages of the remaining items,[3] and the protective order required that to the extent that those pages contained confidential communications, such communications be masked by a method requiring neither reproduction nor redaction. (Id. at 3-5.)

---

[3] The remaining eleven items potentially containing confidential communications are: (1) Research study eligibility form (F1); (2) Psychosocial history form (F6); (3) B.D.I. form (F7); (4) CESD form (F8); (5) Rosenberg form (F9); (6) Toronto alexithymia scale form (F10); (7) Perinatal bereavement scale option sheet (F11); (8) Maternal social support index (F12); (9) Sarasen social support questionnaire (F13); (10) Attitudes to fetus/pregnancy form (F14); (11) Antenatal-bonding questionnaire (F15).

Finding that the Relator showed good cause under 42 U.S.C. § 290dd-2 and 42 C.F.R. § 2.64(d), the court ordered that the Relator could have access to patient identifying information. (Id. at 5.) Therefore, the current protective order allows the Relator's legal representatives to review original New Start research records with confidential communications masked, and to review treatment records recording only identifying information, the fact of treatment, and treatment dates. (Id. at 6.) Further, the order provides that the Relator may not copy any of the documents in a participant's file unless the parties agree on what information must be redacted, with the court resolving any issue upon which the parties cannot agree. (Id.) Finally, the protective order requires the County to provide the Relator with other research documents to determine which documents she needs copied to pursue her case. (Id.)

Subsequently, the Relator filed a motion for a protective order, asking the Court to prohibit the County's attorneys from reviewing documents that might contain confidential communications under 42 C.F.R. § 2.64 unless those confidential communications are masked. The Relator also urges the Court to require the County to disclose to the Relator any records the County reviews to prepare its defense, subject to the protection of confidential communications. The County objects to the protective order. The County's main argument is that the records belong to the Hospital, and there is no precedent to support a finding that it cannot share its own records with its own attorneys, especially when those records are vital to its defense.

## II. <u>Discussion</u>

This discovery dispute turns on Title 42 of the United States Code § 290dd-2, which protects the confidentiality of records containing the "identity, diagnosis, prognosis, or treatment

of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States . . . ." 42 U.S.C. § 290dd-2(a). In protecting patients' records, Congress recognized that without assurance that their privacy will be protected, "fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem is to be overcome." H.R. REP. NO. 92-775, at 33, *reprinted in* 1972 U.S.C.C.A.N. 2072. However, Congress also recognized that situations would arise in which the records should be disclosed, such as when a patient consents to their disclosure.[4] 42 U.S.C. § 290dd-2(b)(1). Absent patient consent, the court may order disclosure of the records on a showing of good cause. 42 U.S.C. § 290dd-2(b)(2)(C).[5] To determine good cause, the court must "weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." *Id.*

But it is not just "good cause" under the statute that we must evaluate. Congress vested the Secretary of the Department of Health and Human Services with the authority to promulgate

---

[4] Four patients consented to the disclosure of their complete records in response to the Relator's solicitation, and two additional patients consented to disclosure of their complete records in response to the May 1999 notice and waiver sent to all New Start patients pursuant to the court's May 4, 1999 order.

[5] The statute allows the holder of the records to disclose them without the patients' consent under two additional exceptions that do not apply in this case. The holder may disclose the records if necessary to meet a bona fide medical emergency, § 290dd-2(b)(2)(A), or for purposes of conducting research, management audits, financial audits, or program evaluation, § 290dd-2(b)(2)(B).

regulations to implement the statute. 42 U.S.C. § 290dd-2(g). These regulations, found at 42 C.F.R § 2 *et seq.*, cannot be read in isolation, but must be read together as a framework established to implement the statute and to achieve its purposes. Therefore, in evaluating the Relator's motion to prohibit the County's attorneys' access to patients' confidential communications, this Court is mindful of both the statute's underlying purposes of protecting the privacy of substance abuse treatment patients to assure effective treatment and of promoting the general public welfare by decreasing the incidence of substance abuse. The records in dispute are not regular business records, but records which Congress decided merit special protection, and this Court must strictly construe the regulations and the prohibition against their disclosure. The holder of the records must unconditionally comply with the regulatory restrictions on disclosure and use, regardless of "whether the holder of the information believes that the person seeking the information already has it, has other means of obtaining it . . . or asserts any other justification for a disclosure or use which is not permitted by these regulations." 42 C.F.R. § 2.13(b).

Turning to the case at bar, two regulations govern the disclosures at issue – 42 C.F.R §§ 2.63 and 2.64. First, within the field of confidential information protected, the regulations afford heightened protection to confidential communications.[6] 42 C.F.R. § 2.63; *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1380, 1385 (S.D. Ind. 1994). A court may order disclosure of a patient's confidential communications *only* if one of the three exceptions applies:

---

[6] The regulations define confidential communications as communications made by a patient to a program in the course of diagnosis, treatment, or referral. 42 C.F.R. § 2.63(a). *See also Carr v. Allegheny Health, Educ. & Research Found.*, 933 F. Supp. 485, 488 (W.D. Penn. 1996) (noting that confidential communications travel "in one direction, from patient to program, and only for diagnosis, treatment or referral").

(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury . . . ; (2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime . . . ; or (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63(a). The court must determine at the threshold if one of these exceptions applies. *Mahoney v. Village of Fox Lake*, No. 90 C 1415, 1990 WL 251808, at *3 (N.D. Ill. Dec. 27, 1990). Absent one of the enumerated exceptions, a court may not order disclosure of a patient's confidential communications, even if the party seeking the communications establishes good cause and needs to use the protected records to prove its case.

The First Circuit case of *Whyte v. Connecticut Mutual Life Insurance Co.*, 818 F.2d 1005 (1st Cir. 1987), demonstrates how strictly these regulations are interpreted. In *Whyte*, the court denied a defendant life insurance company access to confidential communications contained in an insured's alcohol abuse treatment records after the insured's death, finding that none of the exceptions set forth in § 2.63(a) applied. *Id.* at 1010. The court rejected the insurance company's argument that the claimants (the insured's survivors) placed the insured's condition at issue and therefore satisfied § 2.63(a)(3), and likewise rejected the defendant's argument that it needed access to the records to defend its denial of benefits following the insured's alleged suicide. *Id.* Instead, the court explained that the regulations place the need for confidentiality to assure successful alcohol abuse treatment above a party's evidentiary needs, even if that information is of vital importance to the party.[7] *Id.* See also *In re August, 1993 Regular Grand Jury*, 854 F. Supp. at 1385-87 (holding that although the Government established good cause, the court

---

[7] In *Whyte*, the court specifically noted that the protection afforded by 42 U.S.C. §§ 2.63 and 2.64 survives even the patient's death. *Whyte*, 818 F.2d at 1010 n.13.

could "under no circumstances" order a hospital to disclose confidential communications because none of the exceptions of § 2.63(a) applied).

Next, 42 C.F.R. § 2.64 sets forth the procedures and criteria for court orders authorizing disclosure of information protected by the statute. Expanding on the statute's requirement that a court must find good cause before ordering disclosure, § 2.64 further provides that the court may only enter an order if it determines good cause under the regulations exists, i.e., 1) there are no other available or effective ways to obtain the information, and 2) "[t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d). The order itself must limit disclosure of confidential records to those parts of the record which are essential to fulfill the objectives of the order. 42 C.F.R. § 2.64(e)(1). The good cause requirement applies to all information protected by the statute (confidential communications and everything that is not confidential communications). § 290dd-2(b)(2)(C).

With this statutory and regulatory framework in mind, the Court now turns to the settled question of what access the Relator has to confidential communications contained in the records. Because the circumstances of the instant case do not fall within any of the exceptions enumerated in § 2.63(a), the Relator may not have access to those portions of the New Start patient records.[8] Thus, the court allowed the Relator's legal representatives access to original New Start research and treatment records in which confidential communications were masked, and granted the

---

[8] This is consistent with the Seventh Circuit's opinion in *United States ex rel. Chandler v. Cook County, Illinois*, 277 F.3d at 983, and with the current protective order, in which the district court judge held that the Hospital may not disclose to the Relator or to co-defendant Hektoen confidential communications (Dec. 5, 2002 Protective Order, at 5-6.).

Relator access to other New Start research records (those not maintained in research subject files, and which were unlikely to contain confidential communications). (Dec. 5, 2002 Protective Order at 5-6.) The Court found that the Relator satisfied good cause under both 42 U.S.C. § 290dd-2 and 42 C.F.R. § 2.64(d). The finding applied broadly and allowed the Relator to discover patient identifying information. (Dec. 5, 2002 Protective Order at 5.) The Relator does not have access to confidential communications, and we find it irrelevant to our analysis that it may have had limited access at certain times in past years.

The County argues that the Relator could have access to either patient information or confidential communications, but not both. The County relies on the regulations' broad definition of disclosure, which includes "the communication of any information from the record *of a patient who has been identified.*" 42 C.F.R. § 2.11. It argues that if the patient has not been identified, then a disclosure (as defined by the regulations) has not been made and the regulations do not apply to the records. The County then reasons that just because the Relator has chosen to have access to patient information, it does not follow that the County is prevented from deciding that it would prefer to have access to confidential communications.

This argument goes against the language and spirit of the statute and regulations. First, the absurd result of this argument would be that as long as the patient's name, address, and social security number were removed, the entire remainder of the patient file (including confidential communications which would likely contain anecdotal material from which a patient's identity may be inferred) would be open to public perusal. This goes against the intent of the statute and regulations which is to afford heightened protection to drug and alcohol records. It also goes against the language of the statute. The "information" referred to in § 2.11 includes *all*

confidential patient information, including confidential communications. *In re August, 1993 Regular Grand Jury*, 854 F. Supp. at 1384. If the content of the records contains confidential communications, the court must determine at the threshold that one of the subsections of § 2.63(a) applies or a party cannot have access to the confidential communications. *Mahoney*, 1990 WL 251808, at *3. The regulations do not allow the disclosure of confidential communications if the patients' identities have been removed, they only allow the disclosure if one of the subsections of § 2.63(a) applies and if good cause is demonstrated under 42 U.S.C. § 290dd-2(b)(2)(C) and 42 C.F.R. § 2.64(d). Thus, the regulations require good cause before a court may order disclosure of the content of *any* confidential records, and allow a court to order disclosure of confidential communications in only three limited circumstances. If a party demonstrates that it needs confidential communications because one of the three exceptions allowed by § 2.63(a) applies, *and* demonstrates good cause, a court may order the disclosure of both identifying information and confidential communications, to the extent allowed by § 2.64(e).

Next, even if we agreed with the County that its attorneys could view *either* patient identities *or* confidential communications, it would not give the County's attorneys the self-proclaimed access they desire - to each and every single page in each and every file. Finally, even though we find that the County cannot disclose the confidential communications to its attorneys even if the patient identities have been removed because the requirements of § 2.63(a) have not been met, we also alternatively note that the County is not likely to be able to meet the "good cause" requirements for disclosure as confidential communications have not been put at issue in this case. *See also* 42 C.F.R. 2.64(e) ("An order authorizing a disclosure must [l]imit

disclosure to those parts of the patient's record which are essential to fulfill the objective of the order").

Just as the exceptions found in § 2.63(a) do not apply and the County may not disclose confidential communications to the Relator or her attorneys, the County may not disclose those confidential communications to its attorneys to use in preparing its defense. The attorneys are not the same entity as the County, the record holder. The regulations restrict the use as well as disclosure of the records, including any confidential communications contained therein. This restriction reflects Congress' legitimate concern that patients will not enter substance abuse programs if law enforcement entities may use their substance abuse records against them.[9] Courts have long recognized a similar concern when applying the restrictions against *disclosure* of substance abuse records. *See e.g. Whyte*, 818 F.2d at 1010 n.13 (protecting the confidentiality of a deceased patient, noting that the "fear of post mortem disclosure may dissuade others who need treatment from seeking help or may prevent them from communicating with program personnel with the candor necessary for effective treatment"); *Fannon v. Johnston*, 88 F. Supp. 2d 753, 758 (E.D. Mich. 2000) (explaining that Congress intended strict adherence to the "confidentiality provision" to persuade substance abusers to seek treatment); *Local 738, Int'l Bhd. of Teamsters v. Certified Grocers Midwest, Inc.*, 737 F. Supp. 1030, 1034 (N.D. Ill. 1990) (noting the importance of confidentiality and the public interest in encouraging substance abusers to seek treatment). There is no exception for attorneys. And, in this case, it is foreseeable that

---

[9] To guard against this possibility, and to encourage addicts to seek treatment, the regulations provide that even if a party satisfies the requirements of §§ 2.63 and 2.64, the party obtaining access to substance abuse records may not *use* them to prosecute or investigate the patient beyond a narrow set of circumstances. §§ 2.12(a)(2), 2.65(d).

New Start and other substance abuse patients would hesitate to enter a treatment program if they knew that their confidential communications would be disclosed, especially if they knew that the State's Attorney's Office (the County's prosecutorial arm) reviewed their confidential communications, fearing prosecution or investigation for any crimes mentioned therein. Regardless of whether such fears are justified (and we are not insinuating that they are), their possible existence and the very real possibility that those fears will deter substance abusers from seeking treatment cut against Congress' express intent to encourage substance abuse treatment. Therefore, because we find that "important public and private rights will be irretrievably compromised" by disclosure to the County's attorneys, they must not be allowed access. *See c.f. United States ex rel. Chandler*, 277 F.3d at 928 (granting extraordinary remedy of mandamus to alter court's order allowing Relator's counsel access to confidential communications).

The County erroneously relies on *Carr* to support its contention that its attorneys must be allowed to freely use the records of its clients to prepare its defense. *See Carr v. Allegheny Health, Educ. & Research Found.*, 933 F. Supp. 485 (W.D. Penn. 1996). The *Carr* opinion addressed a plaintiff's subpoena seeking information about a third party's (Doe's) substance abuse history and treatment by the same employer, to prove his Title VII claim that the employer treated him less favorably due to his race and age. The court held that because 42 U.S.C. § 290dd-2(b) and 42 C.F.R. § 2.63 protected the confidential communications found in the records, the plaintiff could depose Doe about factual and background information related to his employment,[10] but could not depose Doe about diagnosis, prognosis or treatment information that

---

[10] An acceptable question would be: Did you ever report to work intoxicated?

would have been contained in the records.[11] *Id.* at 488-89. In so holding, the court noted that Doe's attorney presumably would familiarize herself with Doe's records and "interpose appropriate objections to questions whose answers may be drawn *only* from [the protected records]." *Id.* at 490 (emphasis in original). Importantly, in *Carr* the court did not order the disclosure of any records, ostensibly because Doe (the patient) would consent to allowing his attorney to review them in preparation to defend his deposition.

In the case at bar, the *patients* have not consented to disclosure of their confidential communications to the County's attorneys; instead, the County proposes that the records in question are its own records to use as it wishes. However, such assertion is counter to the statute's express purpose of protecting patients' privacy outside the limited circumstances under which a court may order confidential communications disclosed. Thus, *Carr* does not stand for the broad proposition that a research or treatment facility's attorneys may have unfettered access to the confidential communications contained in its records; rather, it is consistent with those cases elevating substance abuse patients' privacy above a litigant's evidentiary need. In fact, in *Carr*, the court specifically noted that it must strictly apply the restrictions on disclosure despite the sharp conflict the case presented: "between the goals of rehabilitating drug abusers and remedying race discrimination." 933 F. Supp. at 490. It also noted that only the statute barred the plaintiff's access to the information that he would "almost certainly" need to prove his case. *Id.*

---

[11] An unacceptable question would be: Was your employment with defendants reinstated after completion of the rehabilitation program?

Therefore, although this Court recognizes that the County claims that a thorough review of patient files might assist the County's attorneys in preparing the County's defense, in the absence of one of § 2.63(a)'s three exceptions, this Court may not allow the County to disclose to its attorneys confidential communications contained within the New Start research and treatment files. To hold otherwise would violate the regulations' clear heightened protection of confidential communications and would contravene Congress' clear intention to encourage substance abusers to seek treatment freely and without fear of exposure or prosecution.

Although it is true that the task of masking the confidential communications to comply with the current protective order rested with the County's attorneys, and that such masking necessarily entails some degree of review, the parties can agree which records are likely to contain confidential communications. Indeed, the parties did reach an agreement, set forth in the current Protective Order. (Dec. 5, 2002 Protective Order, pp. 3-5.) For practical reasons, someone has to do the redacting, but this does not mean that the entire office gets full access for an unlimited time. *See In re August, 1993 Grand Jury*, 854 F. Supp. at 1385 n.4 (allowing files to be redacted but reminding the parties to "implement the general holding of the court in producing subpoenaed material"). Thus, a limited number of the County's attorneys and their assistants may mask the confidential communications contained in those enumerated items and on any additional items found to contain confidential communications. Alternatively, the parties may share the cost of hiring a third party paralegal or attorney familiar with health care law and physician patient privilege to mask all confidential communications. *See Varghese v. Royal Maccabees Life Ins. Co.*, 181 F.R.D. 359, 362 (S.D. Oh. 1998) (finding the proposal to hire a third party attorney familiar with physician-patient privilege and health care law "to be the most

expedient and equitable" means of redacting confidential information protected by a state statute).

Requiring the County and its attorneys to view documents only after confidential communications are masked will not limit the County to the Relator's discovery requests in preparing its own case. The District Court's good cause finding for patient identifying information applies broadly, (Dec. 5, 2002 Protective Order at 5), and this order does not alter that finding. Therefore, the County may use New Start research and treatment records after confidential communications have been masked.

### III. Conclusion

For the foregoing reasons, this Court hereby grants the Relator's motion for entry of a protective order and holds that the terms of the existing protective order, prohibiting access to confidential communications, apply to the County's attorneys. The Court denies the Relator's motion for entry of a protective order to the extent that the County is not required to divulge to the Relator any records it uses to prepare its defense.

Furthermore, it appears to the Court that notice may have to be sent to the New Start Participants again as the notice should inform the patients specifically to whom the information will be disclosed and the patients have not been informed that the County's attorneys will be viewing their files. The parties are invited to submit brief position statements regarding this

matter. *See United States ex rel. Chandler*, 277 F.3d at 982 ("notice must inform patients both of the nature of the disclosure and to whom the information will be disclosed").

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
Dated: October 1, 2003.  United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| MICHELE M. FOX, Esq.<br>Assistant U.S. Attorney<br>219 South Dearborn Street<br>Suite 500<br>Chicago, IL 60604 | TIMOTHY F. HALEY, Esq.<br>NOAH A. FINKEL, Esq.<br>ALISSA L. GILFAND, Esq.<br>Seyfarth, Shaw, Fairweather & Geraldson<br>55 East Monroe Street<br>Suite 4200<br>Chicago, IL 60603 |
| JUDSON H. MINER, Esq.<br>Miner, Barnhill & Galland<br>14 West Erie Street<br>Chicago, IL 60610 | DONNA M. LACH, Esq.<br>ASHLEY C. ESBROOK, Esq.<br>Assistant State's Attorney<br>500 Richard J. Daley Center<br>Chciago, IL 60602 |
| BRADLEY S. WEISS, Esq.<br>Law Office of Bradley S. Weiss<br>268 Leonard Wood S.<br>Highland Park, IL 60035 | |
| ADAM PACKER, Esq.<br>U.S. Department of Justice<br>601 D Street, N.W.<br>Washington, D.C. 20530 | |
| Attorneys for Relator/Plaintiff | Attorneys for Defendants |